938 F.2d 158
 Aaron K. AKIONA; Adam Baker; Bonnie Baker; Edward W.
Moore, III, Plaintiffs-Appellees,
v.
UNITED STATES of America; Secretary of Defense,
Defendants-Appellants.
Aaron K. AKIONA, Plaintiff-Appellant,
v.
UNITED STATES of America; Secretary of Defense; and John
Does 1-25, Defendants-Appellees.
Adam BAKER; Bonnie Baker; Edward W. Moore, III,
Plaintiffs-Appellants,
v.
UNITED STATES of America; Secretary of Defense; John Does
1-10; Doe Corporations; Partnerships and/or
Other Entities 1-10, Defendants-Appellees.
 Nos. 90-15489, 90-15491 and 90-15690.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1991.
Decided July 9, 1991.
 
 Nancy E. Friedman and Paul F. Figley, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants-cross-appellees.
 Eric A. Seitz, Jan T. de Werd, Honolulu, Hawaii, for plaintiffs-appellees-cross-appellants.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHAMBERS, BRUNETTI and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 The plaintiffs brought this action against the United States government under the Federal Tort Claims Act for injuries suffered when an individual threw a hand grenade in a restaurant parking lot. In a bench trial on stipulated facts, the district court found in favor of the plaintiffs and awarded general and special damages. The government appeals the finding of liability, and the plaintiffs cross-appeal on the amount of damages. We reverse the judgment as to liability.
 
 
 2
 * On June 1, 1985, Dennis Keliinui Kaululaau threw a hand grenade in the parking lot of a restaurant in Honolulu. The grenade exploded and injured plaintiffs Aaron Akiona, Adam Baker, and Edward Moore, who were nearby. Kaululaau was convicted of attempted murder and is currently in prison.
 
 
 3
 Investigation showed that the grenade had been part of one of two lots of grenades manufactured for the United States government. One lot, consisting of 30,000 grenades, was shipped to Iowa. The other lot was shipped to Japan (700 grenades), Germany (12,557 grenades), and Hawaii (11,450 grenades). These shipments took place between 1967 and 1969.
 
 
 4
 The government has no record of what happened to the grenades after these shipments. It has a policy of destroying records pertaining to grenades two years after the grenades are disposed of. Kaululaau maintains his innocence, so he has provided no information about how he got the grenade. The parties stipulated, however, that he had the grenade unlawfully and without the knowledge or consent of the government.
 
 
 5
 Akiona, Baker, and Moore, along with Baker's wife, Bonnie, filed suit under the Federal Tort Claims Act against the United States, alleging that the government was negligent in letting the grenade fall into Kaululaau's hands. The district court held a nonjury trial based on stipulated facts and stipulated testimony. It concluded that the government owed a duty to the plaintiffs to safeguard its grenades, and it found, despite any direct evidence of negligence, that the government had been negligent in failing to keep the grenade out of unauthorized hands and awarded damages to the plaintiffs. Akiona v. United States, 732 F.Supp. 1064 (D.Haw.1990). The district court reached its decision by applying res ipsa loquitur to infer that the injuries would not have happened if the government had not been negligent in maintaining the grenade and by shifting the burden of proof to the government based on its destruction of records.
 
 
 6
 The government appeals, challenging the finding of liability, and the plaintiffs cross-appeal, challenging the sufficiency of the damages awarded.
 
 II
 
 7
 The United States is liable under the Federal Tort Claims Act "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. Sec. 2674, and "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. Sec. 1346(b). Because the plaintiffs' theory seems to be that the government negligently let the grenade fall into Kaululaau's hands in Hawaii, we apply Hawaii tort law.
 
 
 8
 The elements of a negligence action are:1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks[;]
 
 
 9
 2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty ... [;]
 
 
 10
 3. A reasonably close causal connection between the conduct and the resulting injury.... [and]
 
 
 11
 4. Actual loss or damage resulting to the interest of another....
 
 
 12
 Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 742 P.2d 377, 383 (1987) (quoting W.P. Keeton, Prosser and Keeton on the Law of Torts Sec. 30, at 164-65 (5th ed. 1984)).
 
 
 13
 We see no error in the district court's conclusion that the government owed a duty to the plaintiffs to take precautions to prevent theft and misuse of government grenades. We therefore turn to the question of whether the government breached its duty.
 
 
 14
 * The plaintiffs were not able to produce any direct evidence of negligence on the part of the government because it is unknown how Kaululaau got the grenade. Nevertheless, the district court found the government negligent because it concluded that the doctrine of res ipsa loquitur created an inference of negligence.
 
 
 15
 "The doctrine of res ipsa loquitur applies 'whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised....' " Cozine v. Hawaiian Catamaran, Ltd., 49 Haw. 77, 412 P.2d 669, 675 (1966) (quoting Ciacci v. Woolley, 33 Haw. 247, 257 (1934) (quoting Morgan v. Yamada, 26 Haw. 17, 24 (1921))). If the doctrine applies, it creates a rebuttable presumption of negligence. Guanzon v. Kalamau, 48 Haw. 330, 402 P.2d 289, 292 (1965).
 
 
 16
 In order for res ipsa loquitur to apply in this case, the plaintiffs must first prove that the government had exclusive control and management of the grenade at the time of the negligence. Jenkins v. Whittaker Corp., 785 F.2d 720, 730 (9th Cir.) (applying Hawaii law), cert. denied, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986). The plaintiffs therefore must show that the government had exclusive control over the grenade at the time it was allowed to get into unauthorized hands.
 
 
 17
 The evidence establishes that the grenade was initially in the possession of the government because it was stipulated that the grenade was manufactured for and delivered to the government. However, the plaintiffs have presented no evidence that the grenade stayed in the possession of the government. The government's expert witness testified that, to the contrary, the grenade could have been transferred to another country or used in Vietnam. Indeed, a significant number of grenades in the relevant lots were shipped out of the country. Even if this grenade had gone to Hawaii, almost twenty years passed between the time when it was clear that the government possessed the grenade and the time when the grenade was used to harm the plaintiffs. During that period, it could have been used or transferred to others, removing it from the control of the government without any negligence. With this much uncertainty, it was error to find that the government had exclusive control over the grenade, and the district court therefore erred in applying res ipsa loquitur.
 
 
 18
 The government also argues that the second prong of the res ipsa loquitur test is not satisfied because the occurrence is not of the sort that ordinarily does not happen without someone's negligence. We need not reach that issue because, without a showing of exclusive control, res ipsa loquitur does not apply.
 
 B
 
 19
 The district court also facilitated its finding of liability by shifting the burden of proof to the government because of the government's destruction of records pertaining to the grenade. Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case. Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir.1988).
 
 
 20
 The adverse inference is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document....
 
 
 21
 The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.
 
 
 22
 Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir.1982).
 
 
 23
 The evidentiary rationale does not apply here. Nothing in the record indicates that the government destroyed the records pertaining to the grenade in response to this litigation. Thus, its destruction of the records does not suggest that the records would have been threatening to the defense of the case, and it is therefore not relevant in an evidentiary sense.
 
 
 24
 The deterrence rationale similarly does not apply. A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant. See id. at 218 ("The inference depends, of course, on a showing that the party had notice that the documents were relevant ..."); id. at 219 (indicating that this "minimum link of relevance" is required before deterrence rationale would justify shifting burden of proof); see also Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir.1975) (requiring showing of bad faith). Here, the plaintiffs have not shown any bad faith in the destruction of the records, nor even that the government was on notice that the records had potential relevance to litigation. Nothing in the record indicates that the government destroyed the grenade records with the intent of covering up information.
 
 
 25
 Indeed, the government may have destroyed the records pursuant to its policy of destroying documents regarding grenades two years after their disposition. Unlike Welsh, 844 F.2d 1239, in which the destruction of medical evidence clearly violated a hospital policy, the destruction of the records in this case could have been entirely consistent with the government's document retention policies. If the government had disposed of the grenade (for example, by transferring it to another country), it would not suggest any irregularity or unreasonableness to have destroyed the documents because the government would not expect to be held liable for misuse of the grenade after it left its hands. Because the government's destruction of records is neither relevant nor indicative of bad faith, the district court erred in shifting the burden of proof to the government.
 
 
 26
 We conclude that the district court erred by applying res ipsa loquitur and by shifting the burden of proof to the government, and we therefore reverse the district court's judgment as to liability to the extent that it relied on these principles.
 
 III
 
 27
 The plaintiffs argue in their cross-appeal that the district court's award of general damages was insufficient to compensate them for their injuries. Because we reverse on liability, the cross-appeal presents an issue we need not reach. Nevertheless, to avoid retrial on damages, we note that we see no error in what the district court did. We review the district court's determination of damages for clear error. Shaw v. United States, 741 F.2d 1202, 1205 (9th Cir.1984).
 
 
 28
 The plaintiffs cite two cases in support of their position that the damages are too low. Mason v. F. Lli Luigi and Franco Dal Maschio Fu G.B. s.n.c., 832 F.2d 383, 388 (7th Cir.1987) (upholding $800,000 jury verdict for plaintiff who lost right hand and part of arm); Bates v. Merritt Seafood, Inc., 663 F.Supp. 915, 934-36 (D.S.C.1987) (awarding over $760,000 to injured seaman). The district court's findings of damages are, of course, lower than these awards, but that does not mean that they are clearly erroneous. These cases simply hold that damages of approximately $800,000 may be appropriate; they do not hold that $800,000 is required. Moreover, neither of these cases illustrates what similar awards are in Hawaii.
 
 
 29
 The plaintiffs did not present any evidence of future medical expenses or of reduced earning capacities. They only described their injuries. Without more particular information, we cannot conclude that the district court committed clear error in its determination of general damages.
 
 
 30
 REVERSED AND REMANDED.