PARK INNS INTERNATIONAL, INC.,
a Delaware corporation, Plaintiff,

v.

PACIFIC PLAZA HOTELS, INC., a California corporation, and Park Plaza Hotel, a California limited partnership, Defendants.

No. Civ. 97–797–PHX–RCB.

United States District Court,
D. Arizona.

March 30, 1998.

Mark A. Nadeau, Michael A. Lechter, David E. Rogers, Squire, Sanders & Dempsey, Phoenix, AZ, for Plaintiff.

Charles W. Herf, Quarles & Brady, Phoenix, AZ, for Defendants.

## ORDER

BROOMFIELD, District Judge.

Pending before the court is Defendants' motion to dismiss for lack of personal jurisdiction and/or for improper venue. Oral arguments on the parties' supplemental briefs were heard on Monday, March 23, 1998. At the end of those arguments, the court took

the matter under advisement. The court now rules.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been detailed in the court's prior order dated October 8, 1997, and they will be recounted in this order only when necessary. This litigation arises from Defendants' use of the name "park plaza" in connection with their hotel and restaurant services in Oakland, California. Plaintiff contends that Defendants' use infringed on its federally registered service mark "park plaza."

On June 11, 1997, Defendants filed, among other things, a motion to dismiss for lack of personal jurisdiction. The court considered that motion in its October 8, 1997 order. Therein, the court noted that the parties seemed to concede the court did not have general jurisdiction over Defendants but disputed whether specific jurisdiction existed. Specifically, the parties disputed whether Defendants' advertisements in Internet web sites accessible to Arizona residents—which advertisements used the mark "park plaza"—constitute, in and of themselves, "purposeful availment." The court deferred considering the above question because of the possibility that Defendants not only advertised but transacted business over the Internet with Arizona consumers—that is, that Defendants' web sites were interactive rather than passive sites. Such a possibility would have demonstrated purposeful availment under analogous Ninth Circuit cases. Accordingly, the court gave Plaintiff leave to conduct such discovery and gave the parties leave to file supplemental briefs.

## II. DISCUSSION

### A. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### 1. *Cybersell Inc. v. Cybersell Inc.*

After the court issued its October 8, 1997 order, the Ninth Circuit considered the very question on which the court deferred ruling. In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997), the Ninth Circuit held that posting an advertisement on a passive Internet site is insufficient to create purposeful availment. *Id.* at 415, 419. However, the *Cybersell* court also indicated that an interactive web site which allowed defendant to transact business over the Internet would constitute purposeful availment. *Id.* at 416–20. It further suggested that any transaction of business with the forum's residents, whether through the Internet or otherwise, would constitute purposeful availment. *Id.* at 419. It wrote:

> [Defendant] did nothing to encourage people in Arizona to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved in Arizona. To the contrary, it appears to be an operation where business was generated by the personal contacts of one of its founders. While those contacts are not entirely local, they aren't in Arizona either. No Arizonan except for [Plaintiff] "hit" [Defendant's] web construction services. It entered into no contracts in Arizona, made no sales in Arizona, earned no income from Arizona, and sent no messages over the Internet to Arizona. The only message it received over the Internet from Arizona was from [Plaintiff]. [Defendant] did not have an "800" number, let alone a toll-free number that also used the "Cybersell" name. The interactivity of its web page is limited to receiving the browser's name and address and an indication of interest— signing up for the service is not an option nor did anyone from Arizona do so. No money changed hands on the Internet from (or through) Arizona. In short, [Defendant] has done no act and has consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities, in Arizona, thereby invoking the benefits and protections of Arizona law. We therefore hold that [Defendant's] contacts are insufficient to establish "purposeful availment." . . .

*Id.* at 420.

*Cybersell*, therefore, buttresses this court's conclusion in its prior order that purposeful availment exists if Defendants can be shown to have transacted business with Arizona

consumers over the Internet. But *Cybersell* eliminates the fall back position that, even if Defendants did not transact business over the Internet, purposeful availment would still exist based solely on Defendants' advertisements in web sites accessible to Arizona consumers.

### 2. Defendants' contacts with Arizona

Defendants advertised their hotel on two sites: one is their own web site which has the domain name http://www.parkplaza.com while the other is their franchiser's (Best Western's) web site. Both sites list the address, telephone number, and fax number of Defendants' hotel; describe the hotel's amenities; and provide a reservation form that can be filled out over the Internet. In addition, the parkplaza.com site gives Defendants' 1–800 number and e-mail address.

■ Compared to the site in *Cybersell,* Defendants' sites are clearly more "interactive." The site in *Cybersell* was limited to receiving the browser's name, address and an indication of interest. 130 F.3d at 419. By contrast, Defendants' sites permit the consumer to create, amend, or cancel reservations over the Internet.[1] Further, unlike in *Cybersell* where there was no evidence that a forum resident "hit" defendant's web site, there exists evidence here that at least seven persons not only hit the Best Western web site but made reservations for stays at Defendants' hotel through that site.[2] (Exh. 6

1. During oral arguments, Defendants seemed to argue that their site did not allow consumers to make or cancel reservations over the Internet. This is the first time Defendants have raised such an argument. In the prior round of briefings, Plaintiff presented evidence that Defendants' sites were capable of allowing consumers to make or cancel reservations over the Internet. (*See* Exh. A to Exh. 3 of Plaintiff's Response to Defendants' Motion to Dismiss). Until the March 23, 1998 oral arguments, Defendants did not seem to challenge the authenticity of that exhibit. Regardless, even if Defendants' present allegation regarding the attributes of their site is true—that is, even if their site only advertised their hotel and could thus be characterized as "passive," the court would still find purposeful availment because Defendants' advertisements (*on and off the Internet*) resulted in the transaction of business with Arizona residents.

2. No evidence has been presented as to the number of reservations which were obtained through Defendants' parkplaza.com site. Plaintiff submitted an interrogatory to Defendants, requesting them to identify the number of Arizona residents who visited the site. In response, Defendants objected to the interrogatory on several bases, one of which was that "it is impossible to ascertain the identity of *Arizona* residents who reviewed defendants' websites because E-mail addresses do not identify the physical location and/or state from which the E-mail originates." (Exh. 16 to PSB) (emphasis in original). Defendants' objection implied that it maintained such e-mail messages, although such messages would not contain the residence of the Internet user. Subsequently, Defendants indicated that they did not maintain such messages. (Exh. 28 to PSB).

Plaintiff argues that the court should make an adverse presumption against Defendants because they failed to disclose these messages or their content. In support of its argument, Plaintiff cites to *Rockingham Machine–Lunex Co. v. N.L.R.B.,* 665 F.2d 303, 304 (8th Cir.1981).

The adverse inference or adverse presumption rule, as defined in *Rockingham,* provides that "when a party has relevant evidence within its control which it fails to produce, that failure gives rise to an inference that the evidence is unfavorable to the party." *Id.* 665 F.2d at 304 (citing *Int'l Union, United Auto Workers v. N.L.R.B.,* 459 F.2d 1329, 1336 (D.C.Cir.1972)). The Ninth Circuit recognizes such a rule. *See Akiona v. United States,* 938 F.2d 158, 160–61 (9th Cir.1991).

However, the Ninth Circuit has indicated that the adverse inference should not be made where neither of the rationales underlying the rule are present. *Id.* at 161. Those rationales are the evidentiary and deterrence rationale. The evidentiary rationale is the common sense recognition that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. *Id.* In turn, the deterrence rationale presumes that allowing the trier of fact to draw the adverse presumption will deter parties from destroying relevant evidence before it can be introduced at trial. *Id.* The Ninth Circuit has indicated that neither rationale exists unless the party against whom the presumption is applied had some notice that the document(s) was potentially relevant. *Id.*

Here, it is unclear whether Defendants had notice about the potential relevance of the e-mail messages when they destroyed them because it is unclear *when* Defendants destroyed the messages. Notwithstanding, because the court need not apply the adverse presumption rule to find in favor of Plaintiff, it is not necessary to determine whether the rule applies under the circumstances of this case. The court notes, however, that—like Plaintiff—it finds Defendants' claim that they

¶ 20 to PSB;[3] Exh. 6A at 1–38 to PSB). It appears, therefore, that Defendants' solicitation through at least one of the sites resulted in the transaction of business with Arizona residents. The Ninth Circuit has held that solicitation of business within the forum state which results in the transaction of business establishes purposeful availment. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988); *Decker Coal Co. v. Commonwealth Edison, Co.*, 805 F.2d 834, 840 (9th Cir.1986).

■ Beyond Defendants' solicitation in the Internet sites, it appears that Defendants solicited business through other channels and that this solicitation also resulted in the transaction of business with forum residents. Specifically,

1. Defendants posted their hotel profile on the Global Distribution System ("GDS"), an automated computer reservations network used primarily by travel agents to book hotel, airline and rental car reservations. (Exh. 6 ¶¶ 3, 5–10 to PSB; Exh. 7 ¶¶ 3, 5–8 to PSB). Using GDS, Arizona travel agents accessed Defendants' hotel profile and booked at least thirteen reservations at Defendants hotel from their offices in Arizona between July 1996 and March 1997. (Exh. 6 ¶ 6 to PSB; Exh. 8 ¶¶ 2, 4–5 to PSB; Exh. 9 ¶¶ 2–5, 8–9 to PSB; Exh. 1 to PSRB[4]). Eight additional reservations to Defendants' hotel from Arizona residents were made through the GDS network by Best Western employees. (Exh. 6 ¶¶ 14–15, 17–19, 21–22 to PSB; Exh. 6A at 9, 11, 20, 25, 28, 33 to PSB).

2. Defendants' hotel profile appeared in two publications distributed to Arizona residents: the Best Western Road Atlas & Traveler's Guide and the AAA TourBook. (Exh. 16 at 9–10 to PSB; Exhs. 17–19 to PSB). At least one Arizona resident booked a reservation to Defendants' hotel through this solic-

itation. (Exh. 20 ¶¶ 1–5 to PSB; Exh. 21 to PSB).

3. Through Best Western's marketing programs, Defendants received at least 116 reservations from Arizona residents between April 1996 and April 1997, which reservations were channeled through Best Western's Arizona reservation center. (Exh. 6 ¶¶ 23–25 to PSB; Exh. 6A at 1–38 to PSB; Exh. 22 to PSB).

Other than Defendants' solicitation of business, Plaintiff points to other contacts including: (1) Defendants' payment of 32 commissions to Arizona travel agents (Exh. 8 ¶ 6 to PSB; Exh. 9 ¶ 10 to PSB; Exh. 11 at PAC00765 to PSB; Exh. 12 at PAC00749 to PSB; Exh. 13 at PAC00720 to PSB; Exh. 14 at PAC00391 to PSB; Exh. 15 at PAC00193 to PSB; Exh. 23 to PSB); (2) Defendants' travels to Arizona to meet with Best Western employees and travel agencies (Exh. 16 at 15–16 to PSB; Exh. 16A to PSB; Exh. 5 to PSRB); (3) Defendants' payment of Best Western's reservation and promotion services (Exh. 10–15 to PSB); and (4) Defendants' contract with Best Western which is headquartered in Arizona and which contract provides that Arizona law governs and that Defendants are subject to personal jurisdiction in Arizona (Exh. 24 at 7 to PSB).

The court agrees with Plaintiff that the above-mentioned contacts would support a finding of purposeful availment. These contacts are attributable to Defendants' own actions as opposed to the unilateral action of Plaintiff or a third party. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Further, the contacts demonstrate that Defendants allowed or promoted the transaction of business within the forum state. *See Decker Coal Co.*, 805 F.2d at 840.

■ However, it cannot be said that Plaintiff's trademark infringement claim arises out of and would not exist "but for" all the above contacts, especially Defendants' contract with Best Western, their travels to Arizona, their

---

do not maintain such messages—especially messages as recent as a year ago—somewhat dubious in light of the commercial value of such messages.

3. "PSB" refers to Plaintiff's supplemental brief.

4. "PSRB" refers to Plaintiff's supplemental reply brief.

payment of commissions to Arizona travel agents, and their payment of Best Western's promotional and reservation services. Notwithstanding, it can be said that Plaintiff's trademark infringement claim would not exist—at least in part—but for Defendants' use of the mark "park plaza" in solicitations on the Internet web sites, on GDS, and in printed publications. *See Ballard,* 65 F.3d at 1500. *See also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780–81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

The court is unpersuaded by Defendants' arguments to the contrary. In their supplemental brief, Defendants argue that local advertising is not enough to subject a nonresident to personal jurisdiction in the forum state. Defendants' argument, however, ignores the fact that their contacts went beyond solicitation and resulted in the transaction of business with Arizona residents.

Citing to *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240 (9th Cir.1984), Defendants also argue that sales and sales promotion activities through independent, non-exclusive sales representatives are not enough to subject an out-of-state company to local jurisdiction. *Congoleum,* however, involved general jurisdiction, not specific jurisdiction. *Id.* 729 F.2d at 1242. The *Congoleum* court held that sales and sales promotion by independent nonexclusive sales representatives are insufficient to assert jurisdiction on an *unrelated* cause of action. *Id.* 729 F.2d at 1242. But the *Congoleum* court seemed to suggest—or at least left open the possibility—that similar contacts would be sufficient to support jurisdiction over a cause of action *related* to the contacts. *Id.*

Further, Defendants advance the rather novel argument that Plaintiff should be estopped from filing its complaint here since Defendants forwarded a draft copy of their Complaint on April 16, 1997, a day before Plaintiff "surreptitiously" filed their complaint before this court. The court finds Defendants' estoppel argument unpersuasive, unsupported by case authority, and ultimately irrelevant.

██ Lastly, Defendants argue that the "effects test" is not met here. Before addressing the merits of this argument, the court addresses the threshold question of whether the "effects test" even applies here. The court's reading of *Cybersell* indicates that it does not. 130 F.3d at 420. During oral arguments, however, the parties seem to agree that *Cybersell* applied the "effects test" to a trademark infringement·claim much like this case but that it found no purposeful availment under that test. Assuming that the parties' reading of *Cybersell* is correct, the court nonetheless disagrees with Defendants that the effects test is not met here. To meet the effects test, there must be (1) intentional tortious actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which defendant knows is likely to be suffered—in the forum state. *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1486 (9th Cir.1993). As indicated in the court's prior order, Plaintiff has made a prima facie showing that Defendants engaged in intentional tortious actions causing harm, the brunt of which is suffered in Arizona, Plaintiff's principal place of business. 10/8/97 Order at 9–12. The only question the court left open in that prior order was whether Defendants directed their tortious actions at Arizona. Based on Defendants'· solicitations of business in Arizona which solicitations used the allegedly infringing mark, the court concludes that Defendants have expressly directed their tortious actions to Arizona.

In summary, the court finds that purposeful availment is established, and, based on the reasoning in its October 8, 1997 order, the court finds that Plaintiff's claim is related to Defendants'· forum-related activities and that the court's exercise of jurisdiction over Defendants is reasonable. The court will therefore deny Defendants' motion to dismiss for lack of personal jurisdiction.

## B. MOTION TO DISMISS FOR IMPROPER VENUE

In its prior order, the court deferred ruling on this motion because, if Defendants were subject to personal jurisdiction here, then venue would be proper. *See* 28 U.S.C. § 1391(b)(1) & (c). Since the court has found that Defendants are subject to personal jur-

isdiction here, the court will deny their motion to dismiss for improper venue.

IT IS THEREFORE ORDERED denying Defendants' motion to dismiss for lack of personal jurisdiction (doc. 7).

IT IS FURTHER ORDERED denying Defendants' motion to dismiss for improper venue (doc. 7).

IT IS FINALLY ORDERED denying without prejudice Plaintiff's motion for preliminary injunction (doc. 12). The court believes that an evidentiary hearing is necessary to resolve Plaintiff's motion for preliminary injunction. Because both parties have indicated that, if an evidentiary hearing is held, they will need to conduct discovery, the court denies without prejudice Plaintiff's motion for preliminary injunction subject to Plaintiff's re-urging of that motion once discovery is completed. Plaintiff may re-urge its motion by simply filing a notice re-urging the previously filed motion and its supporting memorandum and exhibits *or* by filing an amended motion.