SMITH, Chief Judge, concurring in part and dissenting in part.
 

 I agree with my colleagues that the District Court did not abuse its discretion by imposing a permissive adverse inference sanction, and I therefore join Section III.A of the majority opinion. I write separately to add two points to the majority's cogent analysis of why it was permissible for the Court to impose this sanction and not a harsher one. Where I part ways with the majority is in its conclusion that the District Court impermissibly prevented GN's spoliation expert, Dan Gallivan, from testifying. I therefore dissent from Section III.B.
 

 I.
 

 I begin by directly responding to two of GN's challenges to the District Court's permissive inference sanction that lack merit.
 

 First, I reject GN's argument that the District Court erred by imposing a permissive inference because it "was the equivalent of no sanction at all." Appellant's Br. 36. The permissive inference had bite because in explaining it to the jury, the District Court authoritatively told the jury of Plantronics's misconduct and thereby "brand[ed] [Plantronics] as a bad actor."
 
 Morris v. Union Pac. R.R.
 
 ,
 
 373 F.3d 896
 
 , 900 (8th Cir. 2004) ;
 
 see also
 

 Boyde v. California
 
 ,
 
 494 U.S. 370
 
 , 384,
 
 110 S.Ct. 1190
 
 ,
 
 108 L.Ed.2d 316
 
 (1990) (explaining that juries view deferentially statements of a district court). Moreover, GN seems to suggest that the absence of Don Houston's emails did not prevent it from winning on the merits-a further indication that the District Court did not abuse its discretion by declining to impose default judgment against Plantronics.
 
 See
 

 Schmid v. Milwaukee Elec. Tool Corp.
 
 ,
 
 13 F.3d 76
 
 , 79 (3d Cir. 1994) (instructing district courts to "select the least onerous sanction"). By asserting that only default judgment was appropriate, GN effectively contends that the Court, not the jury, should have conclusively decided the extent of the prejudice GN suffered from the spoliation. The jury, however, was the factfinder, and therefore it was permissible for the District Court to entrust this assessment to the jury.
 
 See
 

 Blinzler v. Marriott Int'l, Inc.
 
 ,
 
 81 F.3d 1148
 
 , 1159 (1st Cir. 1996) ;
 
 see also
 

 Schmid
 
 ,
 
 13 F.3d at 79
 
 (stating that one of the central goals of discovery sanctions is "to restore the accuracy of the trial" (internal quotation marks and citation omitted)).
 

 Second, the District Court did not abuse its discretion by declining to impose a mandatory adverse inference instruction. Contrary to GN's suggestion, the weight of authority in fact supports the District Court's choice of a permissive adverse inference.
 
 See
 

 Schmid
 
 ,
 
 13 F.3d at
 
 79 ;
 
 Beaven v. U.S. Dep't of Justice
 
 ,
 
 622 F.3d 540
 
 , 555 (6th Cir. 2010) (noting that "an adverse inference is usually only permissive for the factfinder");
 
 Blinzler
 
 ,
 
 81 F.3d at 1159
 
 (explaining that adverse inference sanctions for the spoliation of evidence should be "permissive, not mandatory");
 
 Akiona v. United States
 
 ,
 
 938 F.2d 158
 
 , 161 (9th Cir. 1991) ("Generally, a trier of fact
 
 may
 
 draw an adverse inference from the destruction of evidence relevant to a case." (emphasis added));
 
 Beck v. Test Masters Educ. Servs., Inc.
 
 ,
 
 289 F.R.D. 374
 
 , 380 (D.D.C. 2013) (stating that "[c]ase law overwhelmingly favors using a permissive rather than mandatory instruction" and collecting cases). And other courts' decisions to impose mandatory adverse inferences hardly means that the District Court abused its discretion here. "Whether an adverse inference is permissive or mandatory is determined on a case-by-case basis."
 
 Flagg v. City of Detroit
 
 ,
 
 715 F.3d 165
 
 , 178 (6th Cir. 2013). Finally, GN is wrong to contend that a mandatory adverse inference was necessary because the spoliation evidence in the record was inadequate for the jury to rationally decide whether to adopt the permissive adverse inference. As explained in Part II below, the Court gave the jury a sufficient evidentiary basis to decide whether it should adopt the permissive inference.
 

 II.
 

 Without a doubt, Plantronics deserves to be called out for its substantial discovery misconduct in this case. It repeatedly flouted its obligations as a litigant, depriving GN of discovery and failing to take all reasonable steps to preserve responsive electronically stored information. As the District Court found and the majority rightly concludes, Plantronics acted in bad faith. The question for the District Court then became: what to do about it?
 

 I dissent from the majority's conclusion that the District Court abused its discretion in declining to admit Dan Gallivan's testimony under Federal Rule of Evidence 403. In my view, the majority makes two errors. First, it minimizes the information regarding the extent of Plantronics's spoliation that the District Court provided to the jury via the stipulations. These stipulations gave the jury an adequate basis to decide whether to adopt the permissive adverse inference. Second, the majority fails to give the required deference to the District Court's reasonable conclusions that Gallivan's spoliation testimony posed a substantial risk of distracting the jury from the antitrust merits of the case and that such risk eclipsed the testimony's probative value. In sum, not only do I fail to detect error, I commend the District Judge for his innovative and effective exercise of case-management discretion.
 
 See
 

 United States v. Schiff
 
 ,
 
 602 F.3d 152
 
 , 176 (3d Cir. 2010) (noting that district courts have "broad discretion" to engage in "case management both before and during trial"). By remanding, the majority not only sets the stage for another antitrust trial but probably for a not-so-mini spoliation trial as well.
 
 [1]
 

 The tried and true abuse-of-discretion standard governs our review of the District Court's evidentiary ruling because by implicitly weighing the probative value of Gallivan's proposed testimony and explicitly considering the risks of its admission, the District Court performed a Rule 403 balancing analysis.
 
 See
 

 Ansell v. Green Acres Contracting Co.
 
 ,
 
 347 F.3d 515
 
 , 525 (3d Cir. 2003). When the District Court made its Rule 403 determination, it had Gallivan's report containing the details of his proposed testimony. The Court implicitly considered the probative value of Gallivan's testimony by concluding that the parties should agree to "stipulations" regarding the spoliation evidence in place of witness testimony. The Court explained its calculus that the value of spoliation testimony was outweighed by the risk that such testimony would confuse the jury and result in jurors deciding to punish Plantronics for its spoliation instead of deciding this case on its merits. Because the abuse-of-discretion standard governs our review of the Court's decision to exclude Gallivan's testimony, we should not reverse unless we have "a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached."
 
 In re Cendant Corp. Prides Litig.
 
 ,
 
 233 F.3d 188
 
 , 192 (3d Cir. 2000) (alternation in original) (internal quotation marks and citation omitted). In my view, GN has failed to satisfy this highly deferential standard.
 

 To be sure, Gallivan's testimony would have had non-negligible probative value, but the District Court read five stipulations to the jury that provided a basis for drawing a reasonable inference about the degree of Plantronics's spoliation (whether it was closer to "several hundred" or "15,000" deleted relevant emails that Plantronics did not recover
 
 [2]
 
 ). App. 1315. All five of
 the following stipulations signaled to the jury that it could find reason to mistrust Plantronics's representations regarding its discovery misconduct and therefore infer that Plantronics's spoliation was at the higher end of the range:
 

 (1) "At least part of the motivation for the e-mail deletion was to deprive GN of evidence to use in this litigation."
 

 Id.
 

 (2) "By one estimate, 482 of the 487 e-mails containing the term 'GN' or 'Jabra' [the name that GN uses for its headsets] were missing from the initial collection of Mr. Houston's emails. The parties do not agree as to whether this is a reliable estimate."
 

 Id.
 

 (3) Plantronics "did not take all steps it could have taken to recover the deleted emails."
 

 Id.
 

 (4) A 17-month period elapsed during which Houston, Plantronics's "senior vice president for U.S. Commercial Sales," may have deleted emails.
 

 Id.
 

 (5) Plantronics did not have backup tapes of Houston's emails for any time during this 17-month period.
 

 Given that the jury had these stipulations, the District Court ensured that it had "sufficient information on which to base a rational decision of whether to apply the adverse inference."
 
 Stevenson v. Union Pac. R.R. Co.
 
 ,
 
 354 F.3d 739
 
 , 750 (8th Cir. 2004). Here, the stipulations provided the jury with sufficient evidence to reach an informed judgment about the degree of Plantronics's spoliation and thereby fulfill its fundamental responsibility to draw inferences based on the record.
 
 Cf.
 

 Sheridan v. E.I. DuPont de Nemours & Co.
 
 ,
 
 100 F.3d 1061
 
 , 1071-72 (3d Cir. 1996) ;
 
 United States v. Pena-Santo
 
 ,
 
 809 F.3d 686
 
 , 701 n.10 (1st Cir. 2015). I fail to see how this record provides a basis for the majority to form a definite and firm conviction that the jury lacked enough information to draw a reasonable inference concerning the extent of Plantronics's spoliation.
 

 In addition, the majority does not accord appropriate deference to the District Court's conclusion that admitting Gallivan's testimony posed a significant risk that the jury's focus would be shifted from the merits of the antitrust case they had been sworn to decide. This is a classic example of the sort of discretionary call that trial judges are far better situated to make than those of us who are confined to reviewing a cold record. In my view, the District Court reasonably concluded that admitting Gallivan's testimony and rebuttal might result in "spoliation taking over what is going to be an antitrust trial." App. 1044. And GN's antitrust claims were far from straightforward-four antitrust claims went to the jury, thereby requiring its members to make multiple findings from record evidence concerning,
 
 inter alia
 
 , commercial decision-making and economic forces that are hardly a part of the average citizen's daily experience.
 
 [3]
 
 It was reasonable for the District Court to carefully limit the amount of spoliation evidence admitted so that the jury would focus on the merits.
 
 [4]
 
 While GN's lawyer
 estimated that Gallivan's testimony would take about 30 minutes, it is highly speculative for the majority to assert that addressing spoliation would require only "a couple of hours." And in any event, it is a usurpation of the trial judge's role for this Court to second guess a determination made immediately before trial regarding the appropriate quantum of evidence on an issue, albeit relevant but collateral to the merits of the antitrust case.
 

 Not only do I lack a definite and firm conviction that the District Judge erred, I consider his limitation on the admission of certain spoliation evidence to have been a sound exercise of discretion. The abuse-of-discretion standard demands that we give him the benefit of the doubt on whether to admit Gallivan's testimony. The majority fails to afford him that deference.
 

 I respectfully dissent.
 

 I acknowledge the majority's statement that, on remand, the District Court may again use stipulations to encapsulate the parties' evidence regarding the extent of Plantronics's spoliation. But given the majority's conclusion that "no application of the correct law to the facts of this case would warrant exclusion of the expert's testimony," it seems unavoidable that the District Court will be required on remand to permit live testimony on spoliation, leading to the mini-trial that the District Court sought to avoid.
 

 The majority faults the District Court for unnecessarily increasing the uncertainty about the number of unrecovered relevant emails by presenting this range, but GN approved of this range in the District Court. GN's lawyer told the Court that he was "fine" with it informing the jury that "it may be that several hundred or even up to 15,000 potentially responsive relevant e-mails were deleted or destroyed." App. 1291.
 

 For example, the jury had to assess whether GN established relevant geographic and product markets, whether Plantronics had market power, whether Plantronics substantially foreclosed GN from competing in the headset market, and whether Plantronics's POD agreements caused GN to lose sales.
 

 Notwithstanding the majority's suggestion, I do not minimize the probative value of Gallivan's testimony. Rather, I conclude that the District Court permissibly determined that the risk of spoliation testimony sidetracking the jury from the case's merits outweighed this testimony's probative value.