NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEVEN M. NELSON,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA, by and through the National Oceanic and Atmospheric Administration,<br><br>Defendant-Appellee. | No. 22-35486<br><br>D.C. No. 3:19-cv-01761-HZ<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted December 5, 2023
Portland, Oregon

Before: NGUYEN and MILLER, Circuit Judges, and MONTALVO,** District Judge.

Steven M. Nelson appeals from the district court's order granting judgment

in favor of the United States following a bench trial on his negligence claim. We

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Frank Montalvo, United States District Judge for the Western District of Texas, sitting by designation.

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Nelson was injured when a gangway he was crossing to disembark a ship broke in half and collapsed. The ship, the *Oscar Dyson*, was owned and managed by the National Oceanic and Atmospheric Administration (NOAA).

We review the district court's factual findings for clear error. *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 634–35 (9th Cir. 2002). We review evidentiary rulings for abuse of discretion. *Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1993).

1. Nelson argues that the district court violated Federal Rule of Civil Procedure 52(a) because it did not make an express finding on whether NOAA was negligent in failing to conduct an initial static load test of the gangway. That rule states that a court, following a bench trial, must "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). All that is required is that the findings "give the appellate court a clear understanding of the basis of the trial court's decision." *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002) (quoting *Alpha Distrib. Co. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972)).

Even without an express finding as to NOAA's negligence, the district court's order is adequate for our review. The record makes clear that the manufacturer, not a downstream purchaser or user, is responsible for conducting a

2

gangway's initial static load test. Nelson insists that the Safety of Life at Sea Convention (SOLAS) imposed on NOAA a duty to arrange for a static load test before using the gangway, but the district court expressly found that the *Oscar Dyson* was not subject to SOLAS. In addition, even if the initial user had a duty to conduct a static load test, the *Oscar Dyson* was not the initial user of the gangway, which it acquired from another vessel.

For similar reasons, we reject Nelson's challenge to the district court's implied finding that the United States was not negligent in failing to conduct an initial static load test. The trial record amply supports the finding that the United States "fulfilled its duty to conduct a reasonable inspection of the gangway before it collapsed and had no duty to load test the gangway once it was in use."

2. Nelson argues that because the gangway was destroyed before an inspection took place, the district court should have presumed that weld cracks on the gangway were visible before it broke. This amounts to an assertion that the district court should have imposed an adverse inference against the United States for the spoliation of evidence. "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F.3d at 1329. Nelson did not expressly move for such an inference as a sanction for spoliation, and the district court did not abuse its discretion in not imposing one.

3

No evidence suggests that the United States destroyed the gangway. Nelson himself acknowledged that there was no record of when the gangway was destroyed. Even if NOAA was responsible for its destruction, the record does not support the assertion that the United States "destroyed the [evidence] . . . in response to this litigation." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). Nor has Nelson shown that "the government was on notice that the [evidence] had potential relevance to litigation." *Id.*

3. Nelson also argues that the district court should have presumed that certain inspections of the gangway—in Kodiak, Alaska and Newport, Oregon—did not happen. In fact, ample evidence supports the finding that the inspections indeed took place.

As to the Kodiak inspection, the district court based its finding on Ryan Harris's uncontested testimony—corroborated by that of Bruce Mokiao—describing his inspection of the gangway. Although Nelson points to discrepancies between Harris's and Mokiao's descriptions of the inspection procedures, and to the absence of Harris's inspection notes, the district court's choice to credit the testimony of the two men in finding that the inspection took place was within its discretion.

As to the Newport inspection, Nelson again suggests that the district court should have imposed an adverse inference because of the destruction of records

4

memorializing that inspection. But it was within the district court's discretion not to apply such an inference because, as the court explained, "there is no custom and practice in the marine industry requiring a ship owner to keep detailed records of inspections of gangways."

4. Finally, Nelson argues that the district court clearly erred in finding his expert and that of the United States equally credible regarding the visibility of the gangway's defects. The district court based its finding on a careful review of the experts' testimony and on the fact that they "agreed on the source of the defect" and disagreed only as to whether that defect would have been visible. Faced with equally credible testimony, the court logically concluded that Nelson had not carried his burden of proving that the defect would have been discovered during a visual inspection. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). Because the district court's finding was supported by the record and was adequately explained, it was not clearly erroneous.

**AFFIRMED.**

5